UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE SUN LIFE ASSURANCE
COMPANY OF CANADA INSURANCE
LITIGATION

Civ. No. 2:95-05723 (WJM)

**OPINION**

Defendant Sun Life Assurance Company of Canada ("Sun Life") moves pursuant to the All-Writs Act, 28 U.S.C. § 1651, to enjoin Respondents Dorothy S. Curhan and Howard M. Miller from litigating the claims asserted in *Dorothy S. Curhan v. Sun Life Financial (U.S.) Services Company, Inc. d/b/a Sun Life Assurance Company of Canada et. al.*, Civil Action No. 201300035B, now pending in the Superior Court of Massachusetts. Sun Life also moves pursuant to 18 U.S.C. § 401 to impose contempt sanctions on Miller and Curhan based on a violation of this Court's December 3, 1998 Final Order and Judgment. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court will **GRANT** the motion for an injunction. The Court will **DENY** the motion for contempt.

I. BACKGROUND

A. The Sun Life Policy

On November 8, 1994, Sun Life issued a flexible premium adjustable life insurance policy (the "Policy") to the Allan R. Curhan Trust (the "Trust"). Wilkosky Decl. ¶¶ 3-5, Ex. B. to Declaration of David E. Sigmon, ECF No. 80-3. The Policy was an interest-sensitive life insurance policy because the Policy value was based partly on the interest generated from premiums. *Id.* ¶ 5. The Policy indicated that its "planned periodic premium" was $752.00 due on November 01, 1994 and every 01 months thereafter until maturity." Curhan Policy at 3, Ex. A. to Declaration of David E. Sigmon, ECF No. 80-2. The Policy application form also indicated that the "planned periodic premium" would be $752.00. *Id.* at 21.
When he purchased the Policy on behalf of his Trust, Allan Curhan ("Mr. Curhan") used the brokerage services of the Himmelstein Agency. Complaint ¶ 3, *Dorothy S. Curhan v. Sun Life Financial (U.S.) Services Company, Inc. d/b/a Sun*

1

*Life Assurance Company of Canada et. al.*, Civil Action No. 201300035B (Mass. Sup. Jan. 8, 2013) ("State Court Compl."), Ex. C. to Declaration of David E. Sigmon, ECF No. 80-3. According to Mr. Curhan's wife, Dorothy S. Curhan ("Mrs. Curhan"), Mr. Curhan relied on the Himmelstein Agency's representation that premiums would be fixed at $752.00 throughout the life of the policy. *Id.* ¶ 9.

## B. The MDL

In 1995, Martin E. Steinberg filed a putative class action against Sun Life in New Jersey state court. *See* Stipulation of Settlement ¶ I(B), ECF No. 50; *see also* Ex. D. to Declaration of David E. Sigmon, ECF No. 80-5. Steinberg's case was removed to federal court, assigned to the Honorable Nicholas H. Politan, and subsequently consolidated with other related proceedings by the Judicial Panel on Multidistrict Litigation. ECF No. 16.

In their Consolidated Amended Class Action Complaint (the "Complaint"), the MDL plaintiffs alleged that misleading sales presentations and marketing materials deceived them into purchasing Sun Life life insurance policies. Compl. ¶ 1, ECF No. 20; *see also* ECF No. 83. Specifically, the MDL plaintiffs alleged that Sun Life falsely informed prospective clients that premium payments on "vanishing" life insurance policies would drop to zero after a certain point. *Id.* ¶ 2.

On September 10, 1998, Judge Politan preliminarily certified a settlement class. Preliminary Certification Order, ECF No. 51; *see also* Ex. F. to Declaration of David E. Sigmon, ECF No. 80-8. Judge Politan directed the parties to send notice of the settlement to class members at their last known address of record. *Id.* ¶ G.1. The notice provided that class members could opt out of the settlement by sending a written request to Sun Life. Notice of Class Action at 9, Ex. E to Declaration of David E. Sigmon, ECF No. 80-7. While Sun Life's records indicate that notice of the settlement was sent to the Trust, Mr. Curhan claims that he never received it. Curhan Aff. ¶ 3, ECF No. 84. In any event, Mr. Curhan did not opt out of the settlement.

On December 3, 1998, Judge Politan entered a final order and judgment (the "Final Order") in which he certified a settlement class consisting of all persons who, as of August 24, 1998, "have or had an ownership interest in one or more whole life insurance or interest-sensitive life insurance policies issued in the United States by Sun Life Assurance Company of Canada or Sun Life Assurance Company of Canada (U.S.) . . . during the period from January 1, 1980 through December 31, 1996. ECF No. 72; *see also* Final Order and Judgment, Ex. H to Declaration of David E. Sigmon, ECF No. 80-11.

In the Final Order, Judge Politan found that the class notice he had approved was the "best practicable notice under the circumstances to the class members."

*Id.* ¶ 9. Judge Politan found that the notice constituted "due, adequate, and sufficient notice to all persons entitled to be provided with notice, and fully complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the Rules of the Court." *Id.*

Judge Politan's Final Order is "forever binding on, and . . . [has] *res judicata* and preclusive effect in, all pending and future lawsuits maintained by the plaintiffs and all other Class Members and Releasors . . . [such as class members'] successors and assigns." *Id.* ¶ 11, 12(A)(1). The Final Order contains an injunction (the "Injunction") barring "[a]ll Class Members who did not timely exclude themselves from the Class" from filing any lawsuit "based on or related to the Released Conduct." *Id.* ¶ 13. "Released Conduct" is defined, in part, as:

> any and all acts, omissions, suggestions or communications that are related to or connected in any way with (i) the marketing, sale, solicitation, illustration or replacement of any of the Policies; (ii) the application for any of the Policies . . . (v) the setting or charging of any cost of insurance, commissions, premiums, fees, or expenses . . . .

*Id.* ¶ 12.B.3.

The Final Order incorporates a settlement agreement (the "Settlement Agreement") entered into by Sun Life and the MDL plaintiffs. *Id.* ¶ 8. The Settlement Agreement provided different remedies to different class members. Stipulation of Settlement ¶¶ IV-VI. In the case of the Trust, Sun Life provided a remedy in the form of an interest enhancement on the Policy. Wilkosky Decl. ¶ 10.

### C. The State Court Lawsuit

In the spring of 2002, the Policy was transferred from the Trust to Mrs. Curhan. State Court Compl. ¶ 6. Prior to the transfer, the Trust paid Sun Life monthly premiums of $752.00. *Id.* ¶ 12. The premiums were automatically deducted from a bank account and sent to Sun Life. *Id.* When the Policy was transferred to Mrs. Curhan, Mrs. Curhan continued to make the same payments in the same fashion. *Id.*

In 2011, Sun Life increased the monthly policy premium by a substantial amount. *Id.* ¶ 13. Because Mrs. Curhan's automatic $752.00 payments did not cover the new premium, Sun Life cancelled the Policy. *Id.* Mrs. Curhan did not know that Sun Life had increased her premiums, or even that Sun Life had cancelled her Policy, until she noticed that automatic payments were no longer

being deducted from her account. *Id.* ¶ 17. Apparently, Sun Life attempted to notify Mrs. Curhan of the premium increase but sent its notice to an address that was no longer current. *Id.* ¶¶ 16-17.

After Mrs. Curhan asked the Himmelstein Agency what had happened to her Policy, Mrs. Curhan received a letter from Sun Life dated November 25, 2011. *Id.* ¶¶ 16-17. In that letter, Sun Life offered to restore the Policy and keep it current through January 2012 if Mrs. Curhan agreed to pay $16,542.30 by December 9, 2011. *Id.* Sun Life also offered to restore the Policy and keep it current through November 2012 if Mrs. Curhan agreed to pay $38,409.11. November 25, 2011 Letter from Kathleen Pascinti to Dorothy Curhan, Ex. C to State Court Compl.

On April 6, 2012, Mrs. Curhan's lawyer, Howard M. Miller, sent a letter to Sun Life. April 6, 2012 Letter from Howard M. Miller to Sun Life Assurance Company of Canada, Ex. D to State Court Compl. In the letter, Miller explained that the increase in monthly premium payments ran counter to representations from Sun Life and the Himmelstein Agency that the policy would have a fixed premium. On May 21, 2012, Sun Life responded. May 21, 2012 Letter from James F. Kavanaugh, Jr. to Howard M. Miller, Ex. F to State Court Compl. Sun Life denied that it or its agents represented that monthly premiums would remain fixed. After an intervening letter from Miller sent on June 26 (the letter is not contained in the record), Sun Life responded with a letter of its own on July 13, 2012. July 13 Letter from James F. Kavanaugh, Jr. to Howard M. Miller ("Kavanaugh Letter"), Ex. J to Declaration of David E. Sigmon, ECF No. 80-13. Sun Life provided Mrs. Curhan with three options for reinstating her Policy. All three options would require Mrs. Curhan to pay $38,410 to reinstate the Policy and keep it current through November 1, 2012. Sun Life informed Miller that any lawsuit based on Sun Life's alleged misrepresentations and based on the subsequent cancellation of the Policy would violate the Injunction and place Miller and Mrs. Curhan in contempt of the Final Order.

On January 8, 2013, Mrs. Curhan filed suit against Sun Life and the Himmelstein Agency in the Superior Court of Massachusetts. Mrs. Curhan's case (the "State Court Lawsuit") is captioned *Curhan v. Sun Life Financial (U.S.) Services Company, Inc. d/b/a Sun Life Assurance Company of Canada et. al.*, Civil Action No. 201300035B. The complaint in the State Court Lawsuit contains four counts. In Count I, Mrs. Curhan alleges breach of contract based on Sun Life's increasing the monthly premium. State Court Compl. Count I. In Count II, Mrs. Curhan alleges breach of the implied covenant of good faith and fair dealing based on Sun Life's failure to locate Mrs. Curhan prior to terminating the policy, and based on Sun Life's offer to reinstate the Policy if Mrs. Curhan paid "exhorbitant" premiums. *Id.* at Count II. Additionally, Count II alleges that Sun Life did not offer Mrs. Curhan the chance to lower the face amount of the policy and continue

to pay monthly premiums of $752.00. In Count III, Mrs. Curhan alleges breach of fiduciary duty and fraudulent misrepresentation based on the Himmelstein Agency's representation that the policy had a fixed monthly premium, and based on the Himmelstein Agency's failure to provide Sun Life with a current address for Mrs. Curhan. *Id.* at Count III. Mrs. Curhan claims that had she been provided with timely notice at a current address, she might have been able to prevent the cancellation of the Policy. *Id.* In Count IV, Mrs. Curhan alleges unfair trade practices based on the conduct described in Counts I-III. *Id.* at Count IV.

After Mrs. Curhan filed the State Court Lawsuit, Sun Life again informed Miller that Mrs. Curhan's claims in the State Court Lawsuit were barred by the Injunction. March 14, 2013 13 Letter from Patrick Gennardo to Howard M. Miller ("Gennardo Letter"), Ex. K to Declaration of David E. Sigmon, ECF No. 80-14.

### D. The Motion to Enjoin The State Court Lawsuit

On May 3, 2012, Sun Life filed the instant motions (1) to enjoin Miller and Mrs. Curhan from prosecuting the State Court Lawsuit and (2) to hold Miller and Mrs. Curhan in contempt of the Final Order. ECF No. 80. The case was assigned to the undersigned on May 8, 2013. On May 16, 2013, Miller and Mrs. Curhan entered opposition papers and waived any right they had to a hearing. ECF No. 84 at 3. Sun Life filed a reply brief on May 28, 2013. ECF No. 87.

## II. DISCUSSION

Sun Life maintains that the State Court Lawsuit is barred by the Injunction. Accordingly, Sun Life moves the Court to enjoin Miller and Mrs. Curhan from prosecuting the State Court Lawsuit pursuant to the All-Writs Act, 28 U.S.C. § 1651(a). Sun Life also moves to hold Miller and Mrs. Curhan in contempt of the Final Order pursuant to 18 U.S.C. § 401.

### A. Miller and Mrs. Curhan Are Enjoined From Prosecuting the State Court Lawsuit.

Sun Life argues that the State Court Lawsuit is barred by the Injunction. The Court agrees.

Pursuant to the All-Writs Act, 28 U.S.C. § 1651(a), federal courts may enjoin litigants from pursuing state court actions brought in violation of a class settlement order. *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 261

F.3d 355, 365-66, 368 (3d Cir. 2001).[1]

The Final Order is a class settlement order that extends to all "interest-sensitive life insurance policies issued in the United States by Sun Life Assurance Company of Canada or Sun Life Assurance Company of Canada (U.S.) . . . during the period from January 1, 1980 through December 31, 1996." Final Order ¶ 4(a)(i). The Policy satisfies this criterion. At the time the Final Order was entered, the Trust owned the Policy. Since the Trust did not opt out of the class settlement, it was bound by the settlement. Because the Trust was bound by the class settlement, Mrs. Curhan, as the assignee of the Policy, is also bound. *Id.* ¶ 11, 12(A)(1).

Because Mrs. Curhan is bound by the Final Order, her claims in the State Court Lawsuit are barred if they fall within the scope of the Injunction. As noted earlier, the Injunction covers suits that are based on acts or representations related to "the marketing, sale, solicitation, illustration or replacement of any of the Policies," the Policy application, and "the setting or charging of any cost of insurance, commissions, premiums, fees, or expenses." *Id.* ¶ 14.

Mrs. Curhan's claims in the State Court Lawsuit fall within the scope of the Injunction. Count I is a breach of contract claim against Sun Life. Count I alleges that Sun Life breached its contractual obligation to keep the Policy's monthly premium fixed. Count II is a breach of fiduciary duty claim against Sun Life. Count II alleges that Sun Life did not take reasonable steps to locate Mrs. Curhan and notify her that her premiums were going up. Count II further alleges that Sun Life only gave Mrs. Curhan the option to reinstate her policy if she paid "exorbitant premiums." Finally, Count II alleges that Sun Life did not offer Mrs. Curhan the chance to lower the face amount of the policy and continue to pay monthly premiums of $752.00. Count III is a breach of fiduciary/fraudulent misrepresentation claim against the Himmelstein Agency. Count III alleges that the Himmelstein Agency represented to Mr. Curhan that the Policy premium would remain fixed. Count III also alleges that the Himmelstein Agency failed to notify Sun Life about Mrs. Curhan's change of address, which Mrs. Curhan claims might have allowed her to prevent the cancellation of the Policy. Counts I-III fall within the injunction because they are all based on acts or representations related to "the marketing, sale, solicitation, illustration or replacement of any of the Policies," the Policy application, and "the setting or charging of any cost of insurance, commissions, premiums, fees, or expenses." *Id.* ¶ 14.[2] Count IV asserts

---

[1] The All-Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

[2] While the failure to locate Mrs. Curhan and timely inform her about the increased premiums is only tenuously related to the setting of premiums, it is clear that Mrs. Curhan's ultimate goal is

unfair trade practices claims against Sun Life and the Himmelstein Agency. It is based on the same allegations as Counts I-III. Just as Counts I-III fall within the scope of the Injunction, so does Count IV.

Mrs. Curhan makes several arguments for why the State Court Lawsuit should not be enjoined. These arguments fail. First, Mrs. Curhan argues that she is not covered by the Final Order because her husband never received notice of his opt-out rights. As there is no suggestion that the notice materials and notice distribution scheme approved by Judge Politan failed to comport with the Due Process Clause or the requirements of Rule 23, it does not matter whether Mr. Curhan ever received actual notice. *See Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 417-18 (S.D.N.Y. 2005) ("[A]ctual notice is not required for individuals to be deemed members of a class certified under Rule 23(b)(3) if proper notification procedures were followed."). In is undisputed that Sun Life sent Mr. Curhan the notice approved by Judge Politan in Final Order. Wilkosky Decl. ¶ 8. That was enough to bind Mr. Curhan.

Second, Mrs. Curhan suggests that the Injunction only covers vanishing premium policies because the Amended Complaint's factual allegations are limited to vanishing premium policies. Accordingly, because the Policy was not a vanishing premium policy, Mrs. Curhan argues that the Injunction does not cover the Policy. This reasoning is flawed. The Third Circuit has held that "a class representative can enter into a settlement that bars future claims by class members 'even though the precluded claim was not presented, and could not have been presented, in the class action itself.'" *Freeman v. MML Bay State Life Ins. Co.*, 445 Fed. Appx. 577, 579 (3d Cir. Sept. 21, 2011) (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001)); *see also In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004) ("There is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. In fact, most settling defendants insist on this."). "The key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." *Id.* (citing *TBK Partners Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). The identity called for by this inquiry is not "strict factual identity." *In re Metropolitan Life Ins. Co. Sales Practices Litigation*, No. 96-179, 2012 WL 1378307, at *4 (W.D. Pa. Apr. 19, 2012).

In *Ross v. Metropolitan Life Insurance Co.*, 411 F. Supp. 2d 571 (W.D. Pa. 2006), a class settlement extended to all persons who owned a certain life

---

to require Sun Life to reinstate the Policy and charge lower premiums. That ultimate relief is directly related to "the setting or charging of any cost of insurance, commissions, premiums, fees, or expenses." Final Order ¶ 14.

insurance policy or annuity issued by MetLife. Though the class complaint did not assert claims relating to a specific fraudulent practice, the *Ross* court held that claims relating to the practice were properly barred by the class settlement. *Id.* at 575-78. Here, while the Complaint did not specifically address misrepresentations concerning the fixed or variable nature of a monthly premium, the Complaint did address misrepresentations concerning when a particular type of premium would vanish, or drop to zero. The Injunction properly extended to Mrs. Curhan's claims.

Third, Mrs. Curhan argues that she is not bound by the class settlement because her Policy was cancelled years after Judge Politan signed the Final Order, and also because she asserts claims against a Sun-Life agent, namely the Himmelstein Agency. The Injunction is neither limited in time nor limited to claims against Sun Life. The Injunction enjoins suits based on acts or representations related to "the marketing, sale, solicitation, illustration or replacement of any of the Policies," the Policy application, and "the setting or charging of any cost of insurance, commissions, premiums, fees, or expenses." *Id.* ¶ 14. While some of Mrs. Curhan's allegations concern events that occurred after the Final Order was entered, those events all relate to the "setting or charging of . . . premiums." If Mr. Curhan wished to preserve his ability—and the ability of assignees—to assert claims related to Policy premiums, Mr. Curhan should have chosen to opt-out of the class settlement and forgo the interest enhancement.

Accordingly, the Court will **ENJOIN** Miller and Mrs. Curhan from prosecuting the State Court Lawsuit.

### B. Miller and Mrs. Curhan Are Not In Contempt of This Court's Final Order.

Sun Life argues that the Court should hold Miller and Mrs. Curhan in contempt and order them to pay Sun Life's costs and attorney's fees because Miller and Mrs. Curhan knowingly violated the Final Order. Miller and Mrs. Curhan maintain that they did not violate the Final Order, and that even if they did, they should not be held in contempt because they did not act in bad faith. The Court finds that a contempt sanction is not warranted in this case.

District Courts have the power to impose contempt sanctions pursuant to 18 U.S.C. § 401.[3] To establish civil contempt, Sun Life must demonstrate three things

---

[3] 18 U.S.C. § 401 provides:
    A court of the United States shall have power to punish by fine or imprisonment,
    or both, at its discretion, such contempt of its authority, and none other, as--
        (1) Misbehavior of any person in its presence or so near thereto as to
        obstruct the administration of justice;
        (2) Misbehavior of any of its officers in their official transactions;

by clear and convincing evidence. First, it must establish that the Final Order was a valid court order. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995). Second, it must establish that Miller and Mrs. Curhan knew about the Final Order. *Id.* And third, it must establish that Miller and Mrs. Curhan violated the Final Order. *Id.* Sun Life does not have to establish that Miller and Mrs. Curhan acted in bad faith. *See Harley-Davidson, Inc. v. Morris*, 13 F.3d 142, 148 (3d Cir. 1994).

"[W]here there is ground to doubt the wrongfulness of the [allegedly contemptuous] conduct," courts refrain from imposing contempt sanctions. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (quoting *Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir. 1982)). While the Court ultimately concludes that the State Court Lawsuit filed by Miller and Mrs. Curhan is barred by the Injunction, the Court recognizes that Miller and Mrs. Curhan's contrary position is far from frivolous. This is not a case where parties violated an unambiguous, explicit prohibition in a court order. Instead, it is a case where parties violated a broadly worded Injunction in a complicated class action settlement. Accordingly, the Court will **DENY** the motion for contempt.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** the motion for an injunction, and it will **DENY** the motion for contempt. Miller and Mrs. Curhan are **ENJOINED** from litigating the claims asserted in *Dorothy S. Curhan v. Sun Life Financial (U.S.) Services Company, Inc. d/b/a Sun Life Assurance Company of Canada et. al.*, Civil Action No. 201300035B, now pending in the Superior Court of Massachusetts.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 2, 2013**

---

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.